# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| INVITROGEN CORP., | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:08-CV-112 |
| | § | |
| GENERAL ELECTRIC CO., et al. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants General Electric Company d.b.a. GE Healthcare and GE Healthcare Bio-Sciences Corp.'s (collectively "GE") Motion to Transfer Venue, (Doc. No. 30), Reply in Support, (Doc. No. 42), and Plaintiff Invitrogen Corp.'s ("Invitrogen") Response, (Doc. No. 39).

For the reasons stated below, Defendant's Motion is **GRANTED**.

## BACKGROUND

Invitrogen is a Delaware corporation, with its principal place of business in Carlsbad, California and manufacturing and distribution facilities located in Frederick, Maryland. GE Healthcare is a business owned by General Electric Company that markets the products at issue in the present case. GE Healthcare is headquartered in Little Chalfont, England, and the division associated with this matter has its principal U.S. place of business in Piscataway, New Jersey. In this suit, Invitrogen alleges that GE's products infringe six U.S. Patents related to enzymes used to make copies of DNA.[1] All six of these patents are continuations of a single parent application. Invitrogen acquired these patents from a company called Life Technologies Inc., and GE acquired some of the accused products from a company called Clontech Laboratories, Inc. ("Clontech").

---

[1] U.S. Pat. Nos. 6,589,768, 6,610,522, 6,063,608, 5,668,005, 5,405,776, and 5,244,797, each entitled, "Cloned Gene Encoding Reverse Transcriptase Lacking RNase H Activity."

GE maintains that many of Invitrogen's claims in this case have already been litigated by Invitrogen's predecessor in interest, Life Technologies Inc., and GE's predecessor in interest, Clontech, in the District of Maryland. Those Maryland cases involved at least three of the six patents at issue in this case, and were litigated over a period of nearly 11 years. They resulted in claim construction, summary judgment of indefiniteness of certain claim terms, two appeals to the Federal Circuit, and ultimately a jury trial and verdict of validity and infringement of certain claims in favor of Invitrogen.[2] In May 2007, the District of Maryland entered a settlement agreement between Clontech and Invitrogen. GE has asserted the defense of patent exhaustion based on this settlement agreement.

Invitrogen filed the present suit on March 26, 2008.[3] GE has now filed a motion to transfer venue to the District of Maryland.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Ultimately it is within

---

[2] *Invitrogen v. Clontech Labs. Inc.*, 429 F.3d 1052 (Fed. Cir. 2005); *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320 (Fed. Cir. 2000); *Life Techs., Inc. v. Promega Corp.* (AW-94-2776), *Life Techs., Inc. v. Stratagene, Inc.* (AW-94-2777), *Life Techs., Inc. v. Clontech Labs., Inc.* (AW-96-4080), *Clontech Labs Inc. v. Invitrogen Corp.* (AW-00-1879), and *Invitrogen Corp. v. Stratagene Holding Corp. et al.* (AW-01-1168).

[3] Invitrogen has filed another complaint against GE alleging infringement of a different patent. (6:08-cv-113.) GE has also filed a motion to transfer venue in that case, and the parties in these two cases have only submitted one set of briefs. Although the facts of these two cases contain some similarities, the Court finds them sufficiently distinguishable as to warrant two separate opinions.

a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001); *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The moving party must show that transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected. *In re TS Tech USA Corp.*, 551 F.3d at 1320.

When deciding whether to transfer venue, a district court balances two categories of interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice. *Id.* at 1319. The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* None of the factors are dispositive on their own. *Id.*

Two recent appellate opinions must be addressed in determining whether transfer is appropriate in this case. *Volkswagen II* involved a products liability claim stemming from an automobile collision in Dallas. 545 F.3d at 307. In that case, the Fifth Circuit granted a writ of mandamus requiring the Eastern District of Texas to transfer the case to the Northern District of

Texas. *Id.* at 307. It found that the trial court had erred by giving inordinate weight to the Plaintiff's choice of venue, and by not giving appropriate weight to, among other things, the location of proof, the cost of attendance of willing witnesses, the availability of compulsory process and the localized interest of the fora. *Id.* at 318. Thereafter, the Federal Circuit, relying on *Volkswagen II*, granted a writ of mandamus requiring the Eastern District of Texas to transfer a patent case to the Southern District of Ohio. *In re TS Tech USA Corp.*, 551 F.3d at 1322-23. It found that, in the underlying case *Lear Corp. v. TS Tech USA, Inc.*, No. 2:07-CV-406 slip op. (E.D. Tex. Sept. 10, 2008), the trial court erred by (1) giving too much weight to the plaintiff's choice of forum, (2) failing to recognize the cost of attendance of witnesses, (3) failing to recognize the ease of access to sources of proof, and (4) disregarding Fifth Circuit precedent in analyzing the public interest in having localized interests decided at home. *Id.* These cases will be discussed in more detail below.

## ANALYSIS

The first question a court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404 is whether the suit could have been filed originally in the destination venue. There is no dispute that this case could have been filed in the District of Maryland.

**I.      The Private Interest Factors**

*The Relative Ease of Access to Sources of Proof*

In order for this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. In this case, the parties state that any evidence in this case will likely be located at Invitrogen's headquarters in California and GE's headquarters in England and New Jersey. However, other than generally referring to documents, they have not identified any specific evidence, physical or otherwise. These general statements fail to

show that transfer would make access to sources of proof either more or less convenient for the parties. Because the Court has no basis to conclude that sources of proof could be more easily accessed if the case were transferred to Maryland, this factor is neutral. *See Odom v. Microsoft*, No. 6:08-cv-331, 2009 WL 279968 at *3 (E.D. Tex. Jan. 30, 2009) (while this factor is important and must be considered carefully, it is also important to recognize that electronic information may be accessed conveniently in any number of locations). Even if these statements were sufficient, this factor would be neutral since Maryland would be a more convenient venue for some sources of proof, but less convenient for others.

*The Cost of Attendance for Willing Witnesses*

The Federal Circuit has explained that this factor requires a court to carefully consider the convenience of party fact witnesses. *In re TS Tech USA Corp.*, 551 F.3d at 1320. However, it has not addressed the relative importance of party and nonparty witnesses. *See Odom*, 2009 WL 279968 at *4. In this case, Invitrogen claims that all of its witnesses will be located in California at its corporate headquarters, and that Texas is a more convenient location for these witnesses. GE claims that its witnesses will be located in its offices in England and New Jersey, and that Maryland is a more convenient location for these witnesses. If this case were transferred, Invitrogen's witnesses would need to travel approximately an additional 1000 miles; if this case is not transferred, GE's witnesses would need to travel approximately and additional 1000 miles. Because neither party has identified any party witnesses of particular significance, and because neither the District of Maryland nor the Eastern District of Texas is more convenient for both parties, this factor is neutral with regard to party witnesses.

In addition to potential party witnesses, GE has identified four key nonparty witnesses in this

case; Invitrogen has not identified any nonparty witnesses. The two inventors of all six patents at issue, Michael L. Kotewicz and Gary F. Gerard, all reside in Maryland. Michael L. Kotewicz appears to be an employee of the United States Food and Drug Administration in Laurel, Maryland. Gary F. Gerard appears to be an employee of Transgenomic, Inc., located in Gaithersburg, Maryland. In addition, GE asserts that two professors' publications and laboratory work prior to 1988 constitute invalidating prior art to the patents. These professors have been identified as Drs. Stephen P. Goff at Columbia University in New York City, and Dr. Naoko Tanese at New York University. The District of Maryland would be a more convenient location for all of these witnesses. Of the three classes of witnesses this Court must consider, Plaintiff's witnesses, Defendant's witnesses, and nonparty witnesses, Maryland would be more convenient for two classes and less convenient for one class. Thus, this factor slightly favors transfer.

*Availability of Compulsory Process*

GE has identified four potential nonparty witnesses in this case, but there is no indication that any of them would be unwilling to testify at trial. Even if this Court could not compel a witness's attendance, neither party is prevented from using the witness's videotaped deposition at trial. *See Symbol Tech., Inc. v. Metronomic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006). Nonetheless, because two of these witnesses are located in Maryland, and none are located in Texas, compulsory process will be available for these witnesses only if the case is transferred to the District of Maryland. This factor weighs slightly in favor of transfer.

*All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

Both parties propose arguments under this factor, but they are more appropriately addressed under other factors. This factor is neutral.

## II. The Public Interest Factors

*Judicial Economy*

GE claims that this case should be transferred to the District of Maryland in order to preserve judicial economy.[4] In patent cases, this concern is of particular importance and may be determinative even if the parties considerations call for a different result. *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). When a plaintiff brings similar suits in two different districts, the court must consider the extent to which transfer may increase judicial economy and decrease the risk of inconsistent adjudication. *See J2 Global Commc'ns., Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-11, 2008 WL 5378010 at *3 (E.D. Tex. Dec. 23, 2008).

> If the overlap between cases is substantial, then transferring the cases to a single judge may increase judicial economy and decrease the risk of inconsistent claim constructions. For example, transfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products. On the other hand, if the overlap between cases is small then the risk of duplicative judicial work and inconsistent claim constructions is also small.

*Id.* at *5 (internal citations omitted); *compare Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (transferring case to court which had previously construed three of the four patents at issue and presided over a three week jury trial); *with ConnecTel LLC v. Cisco Sys., Inc.*, No. 2:04-cv-396, 2005 WL 366966 at *4 (E.D. Tex. Feb. 16, 2005) (denying transfer to court which had previously construed two terms of one of four patents at issue).

---

[4]GE's argument concerning the Maryland litigation is mainly focused on the localized interest factor. The Court finds that this issue is more appropriately addressed on its own. *See Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737; *J2 Global Commc'ns., Inc.*, 2008 WL 5378010 at *3.

GE argues that this case should be transferred because the District of Maryland already has extensive connections to the patents and products at issue in this case. GE points out, and Invitrogen does not dispute, that Invitrogen or its predecessor in interest has been involved in litigation in that district in cases filed in 1994, 1996, 2000, and 2001. These cases have involved three of the six patents at issue in this case, several of the same products accused in the present case, and essentially the same parties. It argues that the District of Maryland is intimately familiar with the technology at issue, having already issued claim constructions, conducted a jury trial on infringement, and entered a settlement agreement between the parties. Finally, GE argues that the settlement agreement will be relevant to its defense of patent exhaustion. Invitrogen does not dispute any of these extensive connections between the District of Maryland and the patents, parties, and products at issue in this case. Rather, it argues that the settlement agreement mentioned by GE specifies the application of Delaware law, that this Court can apply Delaware law just as well as a Maryland court, and the District of Maryland never had an opportunity to interpret the agreement.

The Court finds significant overlap between this case and the Maryland cases. *See J2 Global Commc'ns., Inc.*, 2008 WL 5378010 at *5. The District of Maryland is "intimately familiar" with the technology in this case, having construed three of the six patents at issue and presided over a jury trial. *See Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737. The three patents which have not been construed by the District of Maryland are continuations of the patents which have been construed. Furthermore, the previous cases in the District of Maryland involved similarly interested parties and some of the same products at issue in this case. While both this Court and the District of Maryland are equally capable of applying Delaware law, the Court finds that, based on the specific facts present here, the District of Maryland is better situated to interpret the settlement agreement entered

8

between the parties. Because of the significant overlap between this case and the Maryland cases, the Court finds that transfer to the District of Maryland would preserve judicial economy.

*Administrative Difficulties Caused by Court Congestion*

Invitrogen points out that the median time interval from filing to trial of civil cases in this District is 4.5 months less than in the District of Maryland. This Court is not persuaded that this 4.5 month time difference weighs for or against transfer. *See In re TS Tech USA Corp.*, 551 F.3d at 1320; *Odom*, 2009 WL 279968 at *5. Accordingly, this factor is neutral.

*The Local Interest in Having Localized Interests Decided at Home*

In patent cases, when a defendant sells products all over the country, no specific venue has a dominant interest in resolving the issue of patent infringement. *See In re TS Tech*, 551 F.3d at 1321 ("[h]ere, [the accused products] were sold throughout the United states, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"). Thus, in most patent cases, this factor will be neutral. Nonetheless, where a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum. *Volkswagen II*, 545 F.3d at 318.

In this case, GE argues that the District of Maryland has a strong local interest in this case because that Court has experience with the patents at issue, the inventors reside there, and more of GE's products have been sold in Maryland than in the Eastern District of Texas. GE does not point to any authority that holds that prior litigation history contributes to a local interest in the outcome of a patent case. Nonetheless, this Court recently transferred a patent case to the District of Oregon because, *inter alia*, the plaintiff had signed confidentiality agreements with the defendant's outside counsel which were implicated by the defendant's defenses of equitable estoppel and unclean hands.

9

*See Odom*, 2009 WL 279968 at *6. The Court found transfer appropriate in that case partly because of the parties' business history and interaction leading up to the infringement suit. *Id.* In this case, GE has asserted the defense of patent exhaustion based on the prior litigation history in Maryland. Based on this assertion, the Maryland Court's extensive experience with the patents and products at issue, and the fact that this case has no meaningful connection to Texas, the Court finds that Maryland has some local interest in the outcome of this case.

In contrast, GE's other arguments lack merit. The location of witnesses, while relevant under the private interest factors, is not relevant for purposes of this factor. GE's argument would tie the "localized interest" in the outcome of this case to individuals rather than a specific locality. *See Network-1 Sec. Solutions, Inc., v. D-Link Corp.*, 433 F. Supp. 2d 795, 802 (E.D. Tex. 2006), *mandamus denied*, 183 Fed. Appx. 967 (Fed. Cir. 2006) ("[t]his [argument] is illogical since the patent venue statute does not limit venue to the districts where the inventors or prosecuting attorneys reside and is contrary to Congressional intent"). The mere fact that GE has sold more accused products in Maryland rather than in this District does not create a strong localized interest because GE has sold at least one product here, and offered its products for sale throughout the country. Accordingly, at least with regard to product sales, no specific venue has a dominant interest in resolving the issue of patent infringement. *See In re TS Tech*, 551 F.3d at 1321. Nonetheless, for the reasons discussed above, this factor slightly favors transfer.

*The Familiarity of the Forum with the Law that will Govern the Case*

To the extent that this case is a patent case, both this Court and the District of Maryland are equally capable of applying patent law. *See In re TS Tech*, 551 F.3d at 1320. GE argues that this factor should weigh in favor of transfer because the settlement agreement entered in Maryland must

be interpreted to resolve its defense of patent exhaustion. Invitrogen counters that the agreement at issue must be interpreted under Delaware law. Because neither this Court nor the District of Maryland is particularly well versed in Delaware law, this factor is neutral. *See Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

*Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

As in most patent cases, this factor is neutral. *J2 Global Commc'ns, Inc.*, 2008 WL 5378010 at *6.

## CONCLUSION

Under the circumstances presented here, the concern for judicial economy weighs significantly in favor of transfer, with the other factors neutral or weighing slightly in favor of transfer. While Plaintiff's witnesses reside in California, all other key witnesses reside in the Northeast or England. No Texas resident is a party to this litigation, nor is any Texas state law cause of action asserted. Most importantly, a Maryland court has had extensive involvement with three of the six patents at issue and a settlement agreement was entered into in the Maryland litigation that forms the basis of Defendant's patent exhaustion defense. Based on this analysis, the Court finds that Defendant has shown that transfer to the District of Maryland would be clearly more convenient. *See Volkswagen II,* 545 F.3d at 315.

Accordingly, Defendant's Motion to Transfer is **GRANTED**.

**So ORDERED and SIGNED this 9th day of February, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE